UNITED STATES of America, Appellee,

v.

Samuel BRADY, Appellant.

No. 364, Docket 33830.

United States Court of Appeals Second Circuit.

Argued Dec. 11, 1969.

Decided Jan. 20, 1970.

———◆———

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for appellee (Thomas J. Fitzpatrick and Lars I. Kulleseid, Asst. U. S. Attys., on the brief).

Thomas D. Edwards, New York City, for appellant.

Before MOORE and KAUFMAN, Circuit Judges, and RYAN, District Judge.*

RYAN, District Judge:

Appellant and his co-defendant, Thomas Sanders, who did not appeal, were convicted on two counts charging embezzlement of packages by Postal Service employees in violation of 18 U.S.C. Section 1709. The evidence at the trial below may be fairly summarized as follows:

Appellant, Sanders and an unidentified companion were observed on August 18, 1968, a Sunday afternoon, in front of a schoolyard on East 148 Street, in the County of the Bronx, New York City, about an hour after appellant and Sanders left work for the Postal Service. They were in possession of four sizable packages which they took out of a taxicab onto the sidewalk by the schoolyard. These observations were made by two New York City policemen who also saw that the packages appeared to be original cartons, one bearing the name "Philco" printed on it.

The patrolmen approached the men and asked for their names, addresses and the origin of the packages. Brady and Sanders said they were delivering the packages to a candy store nearby owned by a "Mr. Rodriguez" at the request of an unknown man in Manhattan. The patrolmen asked to accompany the men to the candy store; this was assented to, with the three men carrying the packages. During the walk, the third man fled and escaped. At the candy store, "Mr. Rodriguez" was unknown.

Brady and Sanders were taken to the police precinct and later turned over to a Postal Inspector, since the packages bore stamps and Post Office markings. Although several times during the course of the afternoon various law enforcement officials gave the defendants their *Miranda* warnings and attempted to ask them a few questions, each attempt at interrogation terminated immediately after the defendants indicated a desire to remain silent. Both were released and permitted to go home, to return on the following morning. That day, when interviewed by an Assistant United States Attorney, each admitted stealing the packages from the Post Office, intending to sell them.

Appellant raises no question as to the sufficiency of the evidence to establish his guilt. Rather, he urges that the seizure of the stolen packages constituted an unlawful search in violation of the Fourth Amendment, and that the appel-

---

* Of the Southern District of New York, sitting by designation.

lant's statements, both to the police officers and to the Assistant United States Attorney, were inadmissible. These contentions are rejected and the conviction is affirmed.

■ We find the action of the police officers in their initial approach to Brady to be entirely reasonable and proper under the circumstances. When these officers observed Brady and his companions alight from a taxicab at a deserted schoolyard on a Sunday afternoon in possession of four cartons, at least one of which was marked with a well-known brand name, they were certainly entitled to make a casual inquiry. The subsequent flight of the third man, coupled with the non-existent "Mr. Rodriguez," made further inquiry not only proper but virtually mandatory. The facts of this case are almost parallel to those which we reviewed in affirming the conviction in United States v. Thomas, 396 F.2d 310 (2 Cir. 1968). We there sustained conduct by officers very similar to that of the policemen here, stating:

> "Not only were appellants not in custody, but there were few restraints of any kind on them at that time (when they were questioned as to the origin of the packages). * * * Appellants were approached on a public street, not questioned in the station house * * *, and they never suggested that they wanted to leave. * * * Under these circumstances, the few questions asked appellants on the street to determine whether any crime had been committed were more in the nature of 'on the scene' questioning as part of the fact-finding process than custodial interrogation."

The inquiries by the policemen which led to the discovery that the packages were stolen were entirely proper, and well within the bounds that permit a seizure clearly lawful under the Constitution.

■ Appellant also raises a novel interpretation of the Miranda rule established by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The evidence reveals no less than five warnings to Brady of his Constitutional rights.[1] Appellant argues that his confession was inadmissible on the ground that, once he had declined to speak, he could not be questioned again, even if such further questioning occurred after a significant interval of time and was preceded by new Miranda warnings.[2]

■ We rejected such an argument in United States v. Thomas, supra. Recognizing the fact that Thomas is a controlling precedent, appellant asks us to reconsider Thomas. We find no basis for such a review. In view of the release of Brady overnight by the Postal Inspector, the repetition of the Miranda warnings on subsequent occasions does not appear to have been designed to subvert the Miranda rule. We find no violation of the Supreme Court mandates in the procedure here; rather, appellant was afforded his full measure of justice.

Conviction affirmed.

---

1. These occurred (1) when Officer Dean asked appellant to sit in his patrol car, (2) at the station house after one of the packages was noticed bearing a Vassar College address, (3) by the Postal Inspector at the station house, (4) by the Postal Inspector at his office, and (5) by the Assistant United States Attorney just before Brady made his incriminating admissions.

2. Brady also contends that his initial exculpatory statements relating to Mr. Rodriguez and the candy store were improperly admitted because he made these statements before he was informed of his Miranda rights. However, Miranda applies only to custodial interrogations, and at the time Brady told his exculpatory tale about the candy store, not the slightest restraint had been placed on his liberty. We are, therefore, of the view that this claim is without merit.