THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURTIS BROOKSHAW, Defendant-Appellant.

(No. 72-203;

Third District—June 8, 1973.

John L. Barton, of Marseilles, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

This was a prosecution of a juvenile by indictment. After a jury verdict of guilty of murder, the defendant Curtis Brookshaw was sentenced to a term of 30 to 50 years by the circuit court of Kankakee County.

The defendant was arrested for the murder of Robert Griffin at about 1:18 A.M. on Jan. 1, 1972. He gave his age as 18, though in fact he was but 16. The victim was shot in the back of the head, at close range, by a shotgun blast at about 11:45 P.M. Two witnesses observed the defendant enter a crowded tavern, produce the weapon, a sawed-off shotgun, fire it at the victim and then make his way out of the building. He was previously known to the witnesses.

About five minutes after arrest, Detective Krizan had the defendant go with him from the booking desk to his office, where he advised him as to his rights pursuant to *Miranda* and asked if he wished to make a statement. Defendant answered, "No". Not over 5 minutes elapsed and defendant was allowed to make a phone call. About an hour later Detective Whitehead arrived and he with Krizan took defendant to the office to take primer residue tests. Again defendant was admonished of his rights and he again answered "No." After the test was taken defendant was returned to his cell. No interrogation was made. He had a telephone call and was visited by his sister at about 10:00 o'clock the next morning. At noon the detectives again had defendant brought to the office and again he was advised of his rights and asked if he wished to make a statement. At this point he stated that he understood his rights and wished to give a statement. He also signed a written "waiver of rights" after it was read and explained to him and read by him.

Defendant then gave a statement in which he admitted that he and the victim had come to blows earlier in the evening and that when Griffin went outside to get his gun the defendant got it first and ran away. He watched the victim go back into the Paradise Lounge. He went into the lounge, heard a shot, shot at the victim and left, throwing the gun away.

The defendant contends that the fact of assertion by the defendant that he did not want to make a statement, made after the first advice of the rights prescribed in *Miranda*, precluded the police from thereafter warning him as to those rights and inquiring whether he wanted to make a statement. He does not contend that he was not sufficiently warned, nor that he did not understand, nor that he was threatened, tricked or cajoled into a waiver. He contends, simply, that any request after one refusal is *per se* the product of compulsion.

■■ After a hearing on a motion to suppress the statement the follow-

ing facts appear and were so found by the trial judge when he denied the motion: that at the time the statement was given the *Miranda* warnings were read and explained to the defendant in great detail; that defendant had informed the officers that he was 18 years of age, though in fact he was 16 years, one month, and five days; that defendant was given the opportunity to use a telephone and to communiciate with his relatives; that he had been visited in jail, prior to giving the statement, by his sister Mary Ann Brookshaw; that he was given an opportunity to rest and to have normal meals served to prisoners at the Kankakee City Jail; that defendant was asked on three occasions whether or not he desired to give a statement; that on the first two occasions he indicated a desire not to give a statement and on the third occasion the statement was taken; that about 10 hours elapsed between the time of defendant's apprehension and the time of making the statement; that interrogation was not continuous; that the officers were detectives, not juvenile officers and no juvenile officer was contacted; that no promises or threats were made to induce the making of the statement; that defendant made the statement knowingly, voluntarily and understandingly, and free from mental or physical coercion.

It also clearly appears that at no time did defendant request a lawyer and that there was no course of continued importunity or coercive interrogation in the guise of a request for reconsideration.

Defendant argues that when he was first advised of his rights and refused to waive them all further interrogation should have ceased and has cited the following passage from *Miranda v. Arizona*, 384 U.S. 436, 444-445, 16 L.Ed.2d 694.

> "Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him", and from 473-474:
> "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

He also cites *People v. Shinn*, 133 Ill.App.2d 923, 273 N.E.2d 679 and *United States v. Crisp*, 435 F.2d 354.

The Supreme Court, however, goes on to say, 384 U.S. 475, 16 L.Ed.2d at p. 724,

> "If the interrogation continues without the presence of an attor-

ney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel". * * *

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver."

The precise contention and argument was recently raised before the Court of Appeals of New York in the case of *People v. Gary*, 31 N.Y.2d 68, 286 N.E.2d 263. There the court said:

"There is, however, a clear distinction between the continuation, whether by successive agencies or otherwise, of an "interrogation" thus foreclosed (see, e.g., Westover v. United States, 384 U.S. 436, 496-497, 86 S.Ct. 1602, 16 L.Ed.2d 694 decided with *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, supra) and a subsequent request, upon reiteration of the requisite warnings, for reconsideration of an earlier decision to make no statement (cf. *Westover*, 384 U.S., at p. 496, 86 S.Ct. 1602). The narrow issue presented by this case, then, is whether the Assistant District Attorney was precluded from inviting the defendant to make a statement because, an hour before, a like request by a police officer had been declined. Neither *Miranda* nor any broader constitutional mandate prohibits a subsequent request, made otherwise than in the course of continued importunity or coercive interrogation in the guise of a request for reconsideration.

This conclusion is supported by authority (United States v. Brady, 2 Cir., 421 F.2d 681; United States v. Collins, 462 F.2d 792 (2nd Circ. 1972); People v. Rice, 16 Cal.App.3d 337, 94 Cal. Rptr. 4; and see Westover v. United States, 384 U.S. 436, 496, 86 S.Ct. 1602, 16 L.Ed.2d 694, supra; People v. McIntyre, 31 A.D.2d 964, 209 N.Y.S.2d 88; McIntyre v. New York, D.C., 329 F.Supp. 9)."

In *People v. Shinn*, 133 Ill.App.2d 923, 273 N.E.2d 679, this court held that *after a request for counsel* was made by defendant that a valid waiver of his privilege could not be presumed from his silence (requiring an express waiver as stated in *Miranda*). In *United States v. Crisp*, 435 F.2d 354, the conviction was affirmed and the facts were not similar.

■■ Defendant next contends that he was denied his statutory right to protection against criminal prosecution without due process of law. He cites *Kent v. United States*, 383 U.S. 541, 16 L.Ed.2d 84; *In re Urbasek*, 38 Ill.2d 535, 232 N.E.2d 716; and sec. 702—7 of the Juvenile Court Act, Ill. Rev. Stat. 1971, ch. 37, sec. 702—7(1), 7(3).

This section has been amended effective Jan. 1, 1973 apparently to now require a due process hearing but in 1972 the applicable portions read:

"(1) Except as provided in this Section, no boy who was under 17 years of age * * * at the time of the alleged offense may be prosecuted under the criminal laws of this State * * *.

(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition. If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. * * *"

In *Kent v. United States* the Supreme Court, in construing the District of Columbia Juvenile Court Act, held that that Act required a hearing before the juvenile court of the District of Columbia, could waive jurisdiction and permit a minor to be prosecuted for a crime. The defendant in the instant case contends that the following language from *In re Urbasek*, 38 Ill.2d 535, 539 requires a due process hearing in juvenile court:

"Kent was limited in its application to the District of Columbia, but this limitation was effectively removed by the court's admonition in *In re Application of Gault*, 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428, that neither the Fourteenth Amendment or the Bill of Rights is for adults only."

The statement is out of context. In *People v. Bombacino*, 51 Ill.2d 17, 20 the court said, "The statute involved in *Kent*, however, vested the discretion to waive jurisdiction over the minor in the juvenile court. *The Illinois Statute does not give the same discretion to the court.*[1] *Rather the State's Attorney in Illinois is vested with the discretion* to determine whether or not to proceed criminally against a juvenile offender, subject only to the right of the judge presiding in the juvenile division to object, in which event the matter is referred to the chief judge of the circuit court for his decision. * * * *Under our act, a due process hearing as prescribed in Kent is not required at this stage of the proceeding.*" (Emphasis added.)

Again, in *People v. Hawkins*, 53 Ill.2d 181, 290 N.E.2d 231, the court

---

[1] Compare the new Act effective Jan. 1, 1973.

226

stated: *"'Under our act a due process hearing as prescribed in Kent is not required at this stage of the proceeding.'* (Emphasis added.) (51 Ill. 2d at 20, 280 N.E.2d at 699.) Our holding in *Bombacino* is dispositive of this contention."

The judgment of the circuit court of Kankakee County will be affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.